UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, </br></br>Plaintiffs/Counter-Defendants, </br>v. </br></br>BLUE SKY HEAVY HAULING, INC., </br></br>Defendant/Counter-Plaintiff. | Case No. 10 C 2191 </br></br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

The Employee Retirement Income Security Act of 1974 ("ERISA") as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*, imposes liability on employers who withdraw from a multiemployer pension plan to the extent of the employer's share of the plan's unfunded vested benefits. 29 U.S.C. § 1381. Plaintiffs Central States, Southeast and Southwest Areas Pension Fund (the "Fund") and Fund Trustee Howard McDougall (collectively, "Central States") filed this action to compel defendant Blue Sky Heavy Hauling, Inc. ("Blue Sky") to continue making withdrawal liability payments while the parties arbitrate the extent of Blue Sky's liability. Blue Sky asserted a number of counterclaims, and the parties filed cross-motions for summary judgment. Blue Sky subsequently moved to amend its counterclaims. All three motions are now fully briefed and ready for decision.

### I. BACKGROUND

Mike Bates, the president of Blue Sky, has operated a trucking business known as Jackie's Transport, Inc. since 1991. (Bates Aff. ¶ 3.) The employees of Jackie's Transport have never participated in the Fund. (*Id.* ¶ 4.) According to Bates, in 1997, another trucking

company, Holloway, was going out of business. Bates wanted to employ the Holloway truckers, but these potential employees had been paying into the Fund and did not want to lose their benefits. To accommodate these truckers, Bates formed Blue Sky, and the new entity employed the former Holloway truckers. (*Id.* ¶ 5.) Blue Sky signed a collective bargaining agreement and participation agreement with Local Union No. 247 of the International Brotherhood of Teamsters under which Blue Sky agreed to make contributions to the Fund for certain employees. (Answer ¶ 8; Sprau Aff. ¶¶ 11, 12.)[1]

Some time later (the parties dispute when exactly) Central States determined that the arrangement Bates had devised violated the Fund's adverse selection rule. Pension funds provide a type of insurance for employees who pay into the system, and an adverse selection rule seeks to prevent employers from excluding workers who are less likely (probably because they are younger) to draw on the insurance. Because of Blue Sky's violation of the rule, Central States decided on November 13, 2007 to expel Blue Sky from further participation. (*Id.* ¶ 14.) Central States sent a Blue Sky a letter dated November 21, 2007 which purported to terminate Blue Sky's participation as of December 1. (*Id.* ¶ 15.)

---

[1] Along with its summary judgment motion, Central States submits an affidavit from Andrew Sprau, a member of the Fund's staff. Blue Sky makes a lengthy objection to the use of Sprau's affidavit. However, the objection appears only in Blue Sky's response to Central States' Local Rule 56.1 Statement of Material Facts. (*See* Doc. 54 at 2-4.) As this court's Standing Order Regarding Motions for Summary Judgment makes clear, "**NO ARGUMENT SHOULD BE CONTAINED IN THE 56.1(b)(3) STATEMENT.**" Standing Order at 3 (available at www.ilnd.uscourts.gov/home/_assets/_documents/webdocs/gottschall/Summary%20Judgment%20Motions.pdf) (emphasis in original). If Blue Sky believed that Central States' proffered evidence is insufficient to meet its burden on summary judgment, that argument should have been made in its response brief.

In any event, much of Blue Sky's objection appears to attack the weight that should be given to Sprau's testimony, not its admissibility. The court may not weigh evidence at this stage; the only question is whether there is a genuine dispute of material fact. *Costello v. Grundon*, 625 F.3d 342, 364 (7th Cir. 2010). Blue Sky also objects that some of Sprau's statements are legal conclusions rather than facts. The court is capable of separating the two. And Blue Sky argues that Sprau's affidavit somehow violates Federal Rule of Evidence 408 which prohibits the use of "statements made in compromise negotiations regarding the claim." But Blue Sky has not explained nor provided any authority to support the argument.

Blue Sky also denies certain facts in Central States' Rule 56.1 Statement but fails to cite any evidence. In order to demonstrate that a genuine factual dispute exists, Blue Sky must point to specific documents or testimony in the record. Pursuant to Local Rule, the court will deem as admitted any fact which Blue Sky has denied, but which denial Blue Sky has failed to support. L.R. 56.1(b)(3)(C); *In re Motorola Secs. Litig.*, 505 F. Supp. 2d 501, 504 n.1 (N.D. Ill. 2007).

According to Central States' calculations, the expulsion of Blue Sky triggered withdrawal liability of $963,062.89, and a demand letter was sent on February 22, 2008. (*Id.* ¶ 22.) Pursuant to its rights under ERISA, Blue Sky requested arbitration of this determination, and arbitration is now pending.[2] For a period of time, between March 2008 and January 2010, Blue Sky made interim withdrawal liability payments to the Fund of $8,796.42. (*Id.* ¶¶ 22, 27.) As of February 2010, Blue Sky has stopped making payments. (*Id.* ¶ 29.)

In addition to the present lawsuit to force Blue Sky to make interim payments and the arbitration over withdrawal liability, Central States brought another action seeking unpaid contributions of approximately $35,000. *See Cent. States, Se. & Sw. Areas Pension Fund v. Blue Sky Heavy Hauling, Inc.* ("Contribution Lawsuit"), Case No. 08 C 3338 (N.D. Ill. filed June 10, 2008). That case, and Central States' separate summary judgment motion, is currently pending before Judge Dow. (*See* Contribution Lawsuit, Doc. 102.) Blue Sky filed a motion before Judge Dow to consolidate the cases. (*Id.*, Doc. 91.) Although that motion was pending at the time the parties briefed the motions in this case, Judge Dow has since denied Blue Sky's motion to consolidate. (*See id.*, Doc. 114.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party is so entitled if no reasonable fact-finder could return a verdict for the nonmoving party." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 485 (7th Cir. 2007). At the summary judgment stage, the court should view the evidence in the light most

---

[2] ERISA requires that a plan sponsor notify an employer "as soon as practicable" after withdrawal of the amount of liability and schedule for payments. 29 U.S.C. § 1399(b)(1). An employer may ask the plan sponsor to review its determination within 90 days. *Id.* § 1399(b)(2). If the conciliation procedure fails to resolve the dispute, the parties may resort to arbitration. *Id.* § 1401.

3

favorable to the nonmoving party, drawing all inferences in that party's favor. *Cedillo v. Int'l Ass'n of Bridge & Structural Iron Works, Local Union No. 1*, 603 F.2d 7, 11 (7th Cir. 1979). However, the evidence presented at this stage must comport with the Federal Rules of Evidence and be admissible at trial, *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010), or it must consist of affidavits or declarations "made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant or declarant is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

Central States' brief in support of its motion makes a clear-cut case in favor of summary judgment. Under ERISA, once a multiemployer plan assesses withdrawal liability against an employer, the employer must make payments despite the fact that the employer may dispute liability and choose to arbitrate. 29 U.S.C. §§ 1399(c)(2), 1401(d) . The employer's defenses are strictly limited:

> [F]ederal judges "have no equitable power to excuse interim payments." In enacting ERISA, Congress decided that interim payments were mandatory—no excuses—because the "stakes" are safer in the interim if they are held by the Fund. Funds don't go out of business the way thinly capitalized employers do, meaning they can readily refund the payments to [an employer] if an arbitrator rules against them.

*Cent. States, Se. & Sw. Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 875-76 (7th Cir. 1998) (citations omitted). Any dispute over the merits of the plan's claim must be settled by the arbitrator. *Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1015-16 (7th Cir. 2001). The Seventh Circuit has recognized an exception to the general rule that an employer must make interim withdrawal payments. To fit within the exception, an employer must "show both that the pension fund lacks a colorable claim and that the employer will suffer severe financial hardship if compelled to make interim payments." *Id.* at 1016.

4

Blue Sky's response brief is lengthy and complains of the unequal balance of power between a small employer and a large pension plan which is flush with cash to litigate and endowed by Congress with a heavy advantage in court. But the brief is largely devoid of any legal argument. Blue Sky contends that the Fund's adverse selection rule is really a "manipulable concept" which permits Central States to impose withdrawal liability at its whim. And, according to Blue Sky, because the participation agreement gives Central States the discretion to determine the effective date of withdrawal, Central States could have imposed any amount of liability from zero (if it chose a withdrawal date before any employees had earned vested benefits) to close to $1 million (which is the amount actually assessed). Because of the arrangement between Bates and the former Holloway truckers, Blue Sky was allegedly violating the adverse selection rule from the moment it signed the agreements with the union, but Central States did not complain about the problem for nearly ten years.[3] But all of these disputes are matters for the arbitrator. *Id.* at 1015-16.

Blue Sky leans heavily on some language from the Supreme Court's opinion in *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602 (1993). In *Concrete Pipe*, an employer challenged certain provisions of the MPPAA under the Due Process Clause and the Takings Clause. The employer argued that the MPPAA required an arbitrator, in considering an assessment of withdrawal liability, to apply a deferential standard of review to the factual findings and actuarial calculations of the multiemployer plan and that the standard of review created a procedural due process violation. In upholding the MPPAA provisions, the court noted that trustees of a pension fund have a fiduciary duty to the beneficiaries and thus an incentive to maximize the liability of withdrawing employers and to increase the fund's capital. 508 U.S. at 616-17. "[I]f the employer were

---

[3] According to Central States, they did not learn of the violation until 2006.

required to show the trustees' findings to be either 'unreasonable or clearly-erroneous,'" there would be a substantial question of procedural fairness under the Due Process Clause." *Id.* at 626. But the Court instead interpreted the provisions to require only that an employer prove by a preponderance of the evidence that a fund's factual determinations are incorrect or its actuarial methods unsound. *Id.* at 625-26, 635. So the Court concluded that arbitration provided a fair opportunity to resolve any dispute before a neutral decision-maker. *Id*. The Court also turned away substantive due process and Takings Clause challenges. *Id.* at 641, 646-47.[4]

Blue Sky notes the Supreme Court's "warnings" about the potential bias of multiemployer plans in assessing withdrawal liability. But nowhere in its brief does Blue Sky actually define its constitutional theory or attempt to distinguish *Concrete Pipe*. Instead, Blue Sky concludes that adverse selection is a "highly suspect concept" and "as applied to it here is unconstitutional under the Due Process and Takings Clauses." (Doc. 53 at 21-22.) This argument is totally unexplained and unsupported by any authority. Nor does Blue Sky explain its assertion that the court can apply "equitable estoppel" or that Blue Sky's liability is "the result of a breach of implied duty of good faith and fair dealing." (*Id.* at 22.)

Blue Sky also argues that "[t]he facts of this case are unique" because (1) the collective bargaining agreement itself did not specifically mention adverse selection, (2) Central States should have known about Jackie's Transport from the beginning, (3) Central States ignored Blue Sky's violation of the adverse selection policy for years, and (4) Blue Sky made interim payments in good faith for nearly two years. (*Id.* at 25-26.) What is again missing, however, is

---

[4] The substantive due process and Takings arguments in *Concrete Pipe* were based largely on the fact that the MPPAA had been passed by Congress subsequent to the signing of the collective bargaining agreement. *Concrete Pipe*, 508 U.S. at 636. Thus, the law arguably upset settled expectations of the employer. Blue Sky signed its agreements in 1997, long after the enactment of the MPPAA—and, for that matter, after the Court's decision in *Concrete Pipe*.

6

any legal argument or authority that any of these factors permit the court to make an exception from ERISA's rule that Blue Sky make interim payments while arbitration is pending.

As to Blue Sky's counterclaims, they are not even explained in its motion for summary judgment.[5] The court obviously cannot grant summary judgment on counterclaims without any explanation or legal authority. Central States argues that the counterclaims either present issues to be resolved by the arbitrator or are duplicative of counterclaims raised in the Contribution Lawsuit before Judge Dow. Blue Sky does not bother to respond to these arguments. Blue Sky later moved to amend its counterclaims. Central States argues that the amendment does not change the fact that the counterclaims are not appropriately before the court. Blue Sky's reply brief again fails to identify any legal theory for relief.

Finally, Blue Sky asks the court to deny summary judgment and allow the parties to conduct further discovery. Although Rule 56 permits the court to deny a motion to allow discovery to proceed, the nonmovant must show "specified reasons" that "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). In this case, Blue Sky has not identified any legal theory under which it might prevail, let alone any useful evidence that might be uncovered in discovery. Thus the court sees no reason to delay the inevitable.

Central States claims it is also entitled to recover interest, liquidated damages, attorney's fees, and costs from Blue Sky. 29 U.S.C. §§ 1132(g)(2), 1451(b). Blue Sky does not raise any objection to this request, and the court will grant this relief. However, the court also believes that a sanction against Blue Sky's attorneys may be appropriate in this case. Blue Sky has failed

---

[5] The original counterclaims are titled "Restitution," "Recoupment," and "Setoff." (Doc. 10.) The amended counterclaims are titled "Declaratory Relief," "Estoppel," "Breach of Implied Duty of Good Faith and Fair Dealing," and "Setoff/Recoupment." None of these concepts are explained in any of Blue Sky's briefs on the three motions before the court.

to identify any non-frivolous argument for denying summary judgment.[6] Blue Sky's attorneys should have recognized long ago that ERISA requires interim payments to be made while arbitration is pending unless Central States were shown to have no colorable claim to payments. That is the law of this circuit. *Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1015-16 (7th Cir. 2001). And Blue Sky's attorneys have not identified any countervailing authority, nor suggested any good-faith argument for changing the law. Under 28 U.S.C. § 1927, the court has authority to sanction an attorney:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The court also has inherent authority to impose an appropriate sanction. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991). The complaint in this case was filed on April 9, 2010. The parties have been litigating the dispute now for nearly a year. The attorneys for Blue Sky have not identified any reasonable basis for continuing the litigation. Within 28 days, the attorneys may file a brief, no more than ten pages, explaining why they should not be personally responsible for paying Central States' attorney's fees and costs.

### IV. CONCLUSION

Central States' motion is granted. Blue Sky's motions for summary judgment and to amend are denied. Summary judgment is granted for plaintiffs on Central States' claim for interim withdrawal payments and Blue Sky's counterclaims. Blue Sky must make all future interim payments as scheduled, including interest. Central States will have fourteen days from

---

[6] Any meritorious argument which Blue Sky might have had has been waived by its attorneys' failure to adequately explain or support their arguments. *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991), and noting, "We have repeatedly warned that 'perfunctory and undeveloped arguments, and arguments unsupported by pertinent authority are waived . . . .'").

8

the date of the entry of this order to establish the amount of interest, fees, and costs by affidavit. Blue Sky's attorneys may file a brief within 28 days explaining why they should not be sanctioned for unreasonably multiplying this litigation.

ENTER:

        /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 23, 2011